UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RUBY A. HATRIDGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4: 18 CV 2 DDN |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying in part the application of plaintiff Ruby A. Hatridge for disability insurance benefits under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401-434. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the final decision of the Commissioner is affirmed.

## I. BACKGROUND

Plaintiff was born on March 20, 1963, and was 53 years old at the time of her hearing. (Tr. 46.) She filed her application on August 21, 2014, alleging a May 24, 2012 onset date. (Tr. 148.) She alleged disability due to fibromyalgia, hypertension, bipolar disorder, depression, arthritis, carpal tunnel syndrome, Vitamin D deficiency, chronic obstructive pulmonary disease (COPD), and degenerative disc disease. (Tr. 166.) Her application was denied, and she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 84.)

On February 8, 2017, following a hearing, an ALJ issued a decision finding that plaintiff was not disabled under the Act. (Tr. 21-33.) On November 6, 2017, the Appeals Council denied her request for review. (Tr. 1.) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II. ADMINISTRATIVE RECORD

The following is a summary of plaintiff's medical and other history relevant to this appeal.

On September 23, 2011, plaintiff saw Sandra Hoffman, M.D., for, among other things, low back pain. Upon examination, plaintiff's cervical, thoracic, and lumbar spines had normal range of motion. Her sacroiliac joint was nontender. Her hands, wrists, elbows, shoulders, and hips had normal appearance and motion. An x-ray of her lumbosacral spine showed normal vertebral height, alignment, and contour. There was mild facet joint arthritis at L4/5 and L5/S1, but no other structural pathology. A chest x-ray showed her lung fields were clear, moderate COPD, and that she had increased bronchial markings consistent with chronic bronchitis. She was a daily cigarette smoker. She was instructed on the dangers of tobacco use and urged to quit, although she stated that she had no desire to quit at that time. Pelvic x-rays showed intact hip and sacroiliac joints. Dr. Hoffman administered a steroid injection to her hip. (Tr. 230-34, 241-43.)

Plaintiff saw Dr. Hoffmann again on December 30, 2011 for follow up. She was alert, in no distress, and her extremities exhibited no edema. She was not wheezing and did not have decreased breath sounds. Her hands, wrists, and elbows had normal appearance and range of motion. During her rheumatology examination, Dr. Hoffman noted loss of motion (LOM), tenderness and pain on motion of the cervical spine; tenderness in the thoracic spine; LOM and tenderness in the lumbar spine; tenderness in the bilateral sacroiliac (SI) joint; LOM in the hips; and swelling in the knees. Dr. Hoffmann diagnosed fibromyalgia, depressive disorder, COPD, degenerative disk disease

of the cervical and lumbar spines, and radiculopathy of the cervical and lumbar spines. (Tr. 228-29, 299.)

An MRI of plaintiff's cervical spine on January 13, 2012 showed moderate spinal canal stenosis or narrowing, disk protrusions, bulging disks and annular tears at two (2) levels, C4-5 and C5-6. An MRI of her lumbar spine the same day revealed mild facet arthropathy, or disease of a joint, from L2-3 through L5-S1, greatest at L4-5. (Tr. 245-46.)

On March 30, 2012, plaintiff saw Kimberly Buck, nurse practitioner, for routine follow up. Plaintiff stated she was doing fairly well overall and did not have any significant complaints. Ms. Buck discussed smoking cessation with plaintiff because she continued to smoke. Upon exam, plaintiff was in no acute distress, her musculoskeletal system had full range of motion with no swelling or deformities, and her extremities did not exhibit clubbing, cyanosis, edema, or venous stasis. Her fibromyalgia was stable. Plaintiff was counseled as to diet and exercise and referred to pain management for her degenerative disc disease. (Tr. 225-26.)

Plaintiff completed a function report on September 16, 2014. She stated she is in constant pain. She stated her fibromyalgia affects all of her daily activities. Due to her fibromyalgia and knee pain, she could not lift heavy things, and that sometimes she can barely lift a gallon of milk. On a daily basis, she feeds her dogs, does laundry, watches television, makes dinner for up to two hours, washes dishes, and takes a shower. Her son helps her with her dogs. She makes sure her husband takes his medication. With respect to her personal care, she sometimes has trouble with buttons while dressing. She can walk, drive, and ride in a car. She grocery shops twice a month for three to four hours at a time. She can manage her finances. For hobbies, she watches television, reads, and sews when she feels like she can. She spends time with her grandchildren every day. She can walk 45 to 50 feet. She stated that her current medications do not cause side effects. (Tr. 185-90.)

On November 12, 2014, Barry Burchett, M.D., performed a consultative evaluation. He reviewed the January 13, 2012 MRIs of her lumbar and cervical spines. Plaintiff stated that she had noticeable trouble with exertional shortness of breath for about 13 years, although Dr. Burchett noted there was no history of shortness of breath or similar symptoms. Plaintiff also stated she had recurrent abdominal aching since childhood, but Dr. Burchett stated that past abdominal evaluations had been negative. Dr. Burchett observed that plaintiff walked with a normal gait. She did not need to use a handheld assistive device, was stable at station, and was comfortable in the supine and sitting positions. Her neck appeared normal. Dr. Burchett did not observe wheezing in her lungs, there was no chest tenderness, and she was not short of breath with exertion or lying flat. Her shoulders, elbows, and wrists were not tender, and her hands exhibited no swelling, atrophy, or tenderness. Her hands could be fully extended, and she could make fists, write, and pick up a coin without difficulty. Her fingers on both hands had normal range of motion. Her legs had no tenderness, swelling, or crepitus of the knees, ankles, or feet. Her calves were not tender. Examination of plaintiff's cervical spine showed no tenderness or muscle spasms. Her straight leg raising was negative and she could stand on one leg without difficulty. There was no hip joint tenderness or swelling. She could walk on her heels and toes and tandem gait. She could walk 50 feet without assistance. Dr. Burchett believed that plaintiff gave poor effort during the finger squeeze and lower extremity muscle strength examination. His impression was possible fibromyalgia, possible depression, hypertension, and unexplained chronic recurrent abdominal pain. (Tr. 295-302.)

About one year later, on December 22, 2015, plaintiff saw Yusuf M. Chaudhry, M.D., for an internal medicine examination. Dr. Chaudhry found diminished breath sounds bilaterally. Her lumbosacral spine showed lordosis with paraspinal muscle spasticity and multiple trigger points. Pinprick sensation was diminished over both lower extremities over her stocking area. Dr. Chaudhry's impressions were fibromyalgia, chronic low back pain syndrome, chest pain syndrome, and chronic fatigue. He believed

that plaintiff had a mental and/or physical disability which prevented her from engaging in gainful employment for thirteen (13) months or more. (Tr. 309-10.)

Plaintiff saw Dr. Andrew Ninichuck, M.D., her primary care physician, on a quarterly basis from February 20, 2013 to October 21, 2016. On February 26, 2014, she described her headache and fibromyalgia as moderate. Upon examination, Dr. Ninichuck observed that her systems were all normal. (Tr. 265-67.) Plaintiff saw Dr. Ninichuck again on July 16, 2014. Physical examination revealed her systems were all normal. (Tr. 272). During the above period, Dr. Ninichuck observed that plaintiff's overall appearance was normal, her neck was normal, and her constitutional, respiratory, cardiovascular, vascular, and musculoskeletal systems were normal. (Tr. 255-57, 259-60, 267, 272.) He also regularly observed that plaintiff was alert, oriented, in no acute distress, and she did not wheeze or have labored breathing. (Tr. 319, 321, 323, 326, 327, 329-30, 335.) Her extremities generally exhibited no cyanosis, clubbing, or edema. (Tr. 319, 321, 324, 326, 327, 330, 335.) On October 27, 2015, plaintiff complained of recent indigestion and shortness of breath, but she had not tried any over-the-counter medication for it. Upon examination, Dr. Ninichuck observed she was alert, oriented, and in no acute distress. She was not wheezing and did not have labored breathing. Her extremities did not exhibit cyanosis, clubbing, or edema. Dr. Ninichuck continued her on her current medications which included acetaminophen-hydrocodone, for moderate to severe pain; amlodipine, for high blood pressure; Floricet, for migraines; and Ventolin, a bronchodilator for COPD. (Tr. 321-22.)

Plaintiff told Dr. Ninichuck on March 24, 2016, that she was applying for disability and needed him to fill out paperwork. Upon examination, Dr. Ninichuck observed that she was alert, oriented, and in no acute distress. She was not wheezing and did not have labored breathing. Her extremities did not exhibit cyanosis, clubbing, or edema. Dr. Ninichuck continued her on her pain medication. (Tr. 329-30.)

On June 29, 2016, Dr. Ninichuck completed a medical source statement (MSS). Dr. Ninichuck listed diagnoses of peripheral neuropathy, shoulder pain, osteoarthritis,

fibromyalgia, myalgia, arthropathy, migraine, COPD, hypertension, and depression. Dr. Ninichuck noted pain in the shoulders, elbows, hips, low back, upper back, and hands; paresthesia of both feet; shortness of breath; dyspnea on exertion; anhedonia; migraine; and fatigue. Dr. Ninichuck opined that plaintiff could lift and carry less than ten (10) pounds and she was unable to perform sustained sitting, standing and walking in an eight-(8) hour workday secondary to pain. Plaintiff would require more than three (3) hours of rest during an eight-(8) hour workday. Dr. Ninichuck noted there were no supporting clinical studies because plaintiff did not have health insurance. He believed that plaintiff's pain was severe enough to constantly interfere with attention and concentration. Dr. Ninichuck opined that plaintiff could not use either her left or right extremities for any frequent reaching, pushing, pulling, grasping, holding, or gross and fine manipulation. Dr. Ninichuck did not complete the question on the form addressing whether plaintiff was capable of sustained employment at the "light" work level. (Tr. 317-18.)

On September 12, 2016, plaintiff's medications included Norco, for fibromyalgia; Ventolin, for COPD; and Fioricet and Relpax, both for migraines. (Tr. 218.) At a follow-up visit in October 2016, plaintiff reported that she had no new complaints and that her shoulder pain medicine was working and enabling her to function. Dr. Ninichuck continued her on her medications. (Tr. 327-34.)

**ALJ Hearing**

On December 14, 2016, plaintiff appeared and testified to the following at a hearing before an ALJ. (Tr. 38-65.) She did not have medical insurance. She last worked in May 2012 as a machine operator at a plastic bag factory. She previously worked for twenty years as a deli clerk at Kroger's. She was required to be on her feet for the entire day for both of those positions. She did not attempt returning to work after May 2012. (Tr. 48-50.)

She has significant pain and is currently taking narcotic pain medication. Her feet are constantly tingling. She has difficulty walking more than the length of a room. She

cannot hold a gallon of milk.  She cannot type, write, or use a computer with her hands.  She cannot climb the stairs in her home.  She has no energy due to her fibromyalgia.  She sleeps from four to six hours per night.  She does not go out socially with the exception of church on Sunday.  She thinks she is depressed because she no longer enjoys things or gets excited about anything.  She tried taking antidepressants but experienced side effects, and would prefer to deal with her depression on her own.  (Tr. 50-56.)

She can clean dishes, make dinner, and do laundry.  She cannot vacuum or mop.  She cannot do outdoor chores because she has a respiratory reaction to cut grass.  She quit smoking in 2010.  Her pain medications make her constipated.  She has stress-induced headaches that are relieved by sitting in a dark room.  (Tr. 57-59.)

A vocational expert (VE) also testified at the hearing.  The VE testified that plaintiff's past work as head deli clerk was at the "light" level and her position as a plastic machine operator was at the "medium" level.  The ALJ posed a hypothetical involving an individual of plaintiff's age, education, and work experience, who could perform light work, except that the individual could frequently climb ramps and stairs; occasionally stoop, crouch, crawl, and kneel; and could not have concentrated exposure to extreme heat, cold, fumes, dust, and other pulmonary irritants.  The VE testified, based on the hypothetical, that the individual could perform past relevant work as a machine operator, as generally performed, but not as plaintiff performed it.  Alternatively, the VE testified that there were other positions in the national economy that such an individual could perform, such as housekeeper/maid, mail clerk, and bench assembler.  (Tr. 61-62.)

### III.  DECISION OF THE ALJ

On February 8, 2017, the ALJ issued a decision finding that plaintiff was not disabled.  (Tr. at 21-33.)  At Step 1 of the sequential evaluation, the ALJ found that plaintiff had not performed substantial gainful activity since her May 24, 2012 onset date.  At Step 2, the ALJ found plaintiff had the following severe impairments: fibromyalgia;

chronic obstructive pulmonary disease; degenerative disk disease; osteoarthritis; and neuropathy. At Step 3, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 23-25.)

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform "light" work except that she was limited to occasional stooping, kneeling, crouching, and crawling, and frequent climbing of ramps and stairs. She could have no concentrated exposure to extreme heat, extreme cold, fumes, dust, or other pulmonary irritants. (Tr. 26.) With this RFC, the ALJ found plaintiff was capable of performing her past relevant work as a machine operator. Alternatively, at Step 5 the ALJ found that she was capable of making a successful adjustment to other light work that exists in significant numbers in the national economy. (Tr. 31-32.)

## IV. GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings apply the relevant legal standards to facts that are supported by substantial evidence in the record as a whole. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Id. As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to

last for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A); Pate-Fires, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing five-step process).

Steps One through Three require the claimant to prove: (1) she is not currently engaged in substantial gainful activity; (2) she suffers from a severe impairment; and (3) her condition meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform past relevant work (PRW). Id. § 404.1520(a)(4)(iv). The claimant bears the burden of demonstrating she is no longer able to return to her PRW. Pate-Fires, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to her PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. Id.; 20 C.F.R. § 404.1520(a)(4)(v).

## V. DISCUSSION

Plaintiff argues the ALJ erred in formulating her residual functional capacity and in giving little weight to the opinion evidence of treating physician Dr. Ninichuck. The Court disagrees.

RFC is a medical question and the ALJ's determination of RFC must be supported by substantial evidence in the record. Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001); Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001); Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000). RFC is what a claimant can do despite her limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and a claimant's description of her limitations. Donahoo v. Apfel, 241 F.3d

1033, 1039 (8th Cir. 2001); 20 C.F.R. § 404.1545(a). While the ALJ is not restricted to medical evidence alone in evaluating RFC, the ALJ is required to consider at least some evidence from a medical professional. Lauer, 245 F.3d at 704. Defendant has the burden of proof for an assessment of RFC that will be used to prove that a claimant can perform other jobs in the national economy. Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000).

In this case, the ALJ determined that plaintiff had the RFC to perform light[1] work, except that she was limited to occasional stooping, kneeling, crouching, and crawling, and frequent climbing of ramps and stairs. She could have no concentrated exposure to extreme heat, extreme cold, fumes, dust, or other pulmonary irritants. (Tr. 26.)

If the ALJ discounts a treating physician's opinion, he should give "good reasons" for doing so. Davidson v. Astrue, 501 F.3d 987, 990 (8th Cir. 2007); 20 CFR § 404.1527(c)(2). The ALJ gave good reasons here. The ALJ gave little weight to the MSS completed by Dr. Ninichuck because the evidence did not support a less than sedentary restriction with no frequent use of the upper extremities and the need to take extensive breaks during the workday due to pain. The ALJ noted that Dr. Ninichuck gave little explanation in his medical source statement as to how he arrived at his conclusions regarding plaintiff's limitations, and the limitations marked on the form appeared to be largely reiterations of plaintiff's subjective complaints. The ALJ stated that because the opinion cited minimal medical evidence and provided little elaboration, they were of little evidentiary value. Moreover, the ALJ stated that Dr. Ninichuck's opinions were inconsistent with his own notes, as well as the other record evidence as a whole. (Tr. 31-32.) This Court agrees.

---

[1] The regulations define light work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567.

Here, during their appointments, Dr. Ninichuck observed that plaintiff's overall appearance was normal, her neck was normal, and her systems were normal. (Tr. 256-57, 260, 267, 272.) He also regularly observed that plaintiff was alert, oriented, in no acute distress, and did not wheeze or have labored breathing. (Tr. 319, 321, 323, 326-27, 329-30, 335.) According to Dr. Ninichuck, plaintiff's extremities generally exhibited no cyanosis, clubbing, or edema. (Tr. 319, 321, 324, 326-27, 330, 335.) Plaintiff eventually told Dr. Ninichuck that she had no new complaints. In October 2016, she told Dr. Ninichuck that her shoulder pain medication was working and allowing her to function. (Tr. 327, 334.)

Other record evidence was consistent with the ALJ's determination. For example, Dr. Hoffman observed that plaintiff was alert, in no distress, and that her extremities exhibited no edema. (Tr. 228.) Dr. Hoffman stated that plaintiff's spine had a normal range of motion; her sacroiliac joint was not tender; and her hands, wrists, elbows, shoulders, and hips had normal appearance and motion. She was not wheezing and did not have decreased breath sounds. (Tr. 228-29, 230). Ms. Buck examined plaintiff and found her musculoskeletal system had full range of motion with no swelling; her extremities did not exhibit clubbing, cyanosis, or edema; and her fibromyalgia was stable. (Tr. 225, 226). Given that Dr. Ninichuck's opinion was inconsistent with his own treatment notes, as well as the other medical evidence in the record on the whole, the ALJ appropriately discounted it.

The ALJ also gave "significant" weight to the opinion of consultative examiner Dr. Burchett. (Tr. 30, 296-302.) Dr. Burchett reviewed plaintiff's MRIs from January 2012. He noted that plaintiff did not have a history of shortness of breath, chest or abdominal pain, was stable and walked with a normal gait without an assistive device, and was comfortable in supine and sitting positions. (Tr. 296-97.) Her neck appeared normal. He did not observe any wheezing in her lungs, chest tenderness, or shortness of breath with exertion or lying flat. Dr. Burchett observed that plaintiff's shoulders, elbows, and wrists were nontender, and her hands were nontender and did not exhibit swelling or atrophy.

Plaintiff could fully extend her hands, make fists, write, pick up a coin without difficulty, and her fingers had a normal range of motion. Further, plaintiff's legs, calves, and hips exhibited no tenderness or swelling, and there was no crepitus or cracking of the knees, ankles, or feet. (Tr. 298-99.)

Additionally, Dr. Burchett's examination of plaintiff's cervical spine showed no tenderness or muscle spasms, her straight leg raise was negative, and she could stand on one leg without difficulty. Plaintiff could walk on her heels and toes and tandem gait. (Tr. 298-99.) Dr. Burchett opined that plaintiff possibly had fibromyalgia, although her symptoms were "somewhat atypical." (Tr. 299.) Based on the above, this Court concludes that Dr. Burchett's findings are consistent with the record evidence on the whole, and the ALJ appropriately gave his opinion significant weight. See Chesser v. Berryhill, 858 F.3d 1161, 1165 (8th Cir. 2017) (ALJ may credit one-time consultant's opinion over treating physician when consultant's opinion is supported by better or more thorough medical evidence); Fentress v. Berryhill, 854 F.3d 1016, 1020 (8th Cir. 2017) (ALJ may discount treating source opinion in part if it is inconsistent with findings of consultative examiner).

The ALJ also gave partial weight to Dr. Chaudhry's opinion, crediting his assessment of plaintiff's back pain and fibromyalgia, but not his assessment of chest pain syndrome. (Tr. 30, 308-09.) Consistent with Drs. Burchett and Ninichuck, Dr. Chaudhry found plaintiff's neck supple. (Tr. 256, 298, 309.) Consistent with other medical examiners, Dr. Chaudhry noted that plaintiff's extremities did not exhibit cyanosis, edema, or clubbing. (Tr. 309.) Dr. Chaudhry noted that plaintiff had diminished breath sounds although he did not diagnose COPD. (Tr. 309.) Other medical providers also observed plaintiff did not wheeze or have labored breathing. (Tr. 228, 298, 319, 321, 323, 326-27, 329, 335.) This may suggest Dr. Chaudhry largely relied on plaintiff's subjective complaints of chest pain, which the ALJ lawfully discounted. See Mabry v. Colvin, 815 F.3d 386, 391 (8th Cir. 2016) (ALJ is not required to accept every opinion given by a consultative examiner, but must weigh all the evidence in the record); see also Reece v. Colvin, 834 F.3d 904, 909

(8th Cir. 2016) (ALJ may give physician's opinion less deference when based on plaintiff's subjective complaints rather than objective medical evidence"). Finally, this Court notes Dr. Chaudhry conducted his evaluation in relation to plaintiff's Medicaid application. (Tr. 308-10). Cf. Hensley v. Colvin, 829 F.3d 926, 935 (8th Cir. 2016) (disability finding of another agency is not binding on SSA).

Moreover, the ALJ found plaintiff's allegations about the severity of her impairments not entirely consistent with the record. (Tr. 26-31.) See 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p. The ALJ considered plaintiff's testimony, but properly disregarded those allegations that were not supported by the record evidence as a whole. See Igo v. Colvin, 839 F.3d 724, 731 (8th Cir. 2016) (credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts). Although plaintiff claimed she was not able to function because of physical impairments, her daily activities demonstrated otherwise. Plaintiff regularly fed her dogs, did laundry, watched television, read, sewed when she felt like she could, made dinner, washed dishes, showered, assisted her husband with taking his medication, attended church, and spent time with her grandchildren. (Tr. 55, 57, 186-87, 189.) Plaintiff described some difficulty with buttons while dressing, but otherwise did not have difficulty with personal care. (Tr. 186.) She could drive a vehicle, manage her finances, and shop for groceries. (Tr. 188-89.) See Vance v. Berryhill, 860 F.3d 1114, 1121 (8th Cir. 2017) (inconsistency between claimant's subjective complaints and evidence regarding her activities of daily living raised legitimate concerns about credibility).

Moreover, plaintiff received relatively conservative treatment throughout. She was generally treated with Norco for her fibromyalgia, and Ventolin for her COPD. (Tr. 218.) See Milam v. Colvin, 794 F.3d 978, 985 (8th Cir. 2015) (ALJ properly considered plaintiff's conservative treatment including exercises and medication). Plaintiff testified that her medication helped, and in October 2016, told her physician that the medication enabled her to function. (Tr. 51, 334.) See Phillips v. Colvin, 721 F.3d 623, 631-32 (8th

Cir. 2013) (impairment not severe when medication results in improvement enabling individual to undertake activities inconsistent with disability).

This Court agrees with the ALJ's conclusion that once Dr. Ninichuck's medical source statement is discounted, there is no other record evidence on the whole demonstrating a medical provider imposed physical limitations on plaintiff's activities. This Court also notes Dr. Ninichuck did not respond to the question asking whether plaintiff was capable of performing light work. (Tr. 317.) Cf. Bryant v. Colvin, 861 F.3d 779, 784 (8th Cir. 2017) (ALJ noted lack of any medical provider making allowances for any disability in claimant's care). Based on the inconsistencies between plaintiff's complaints, her personal history, and the other record evidence as a whole, the ALJ lawfully discounted plaintiff's testimony regarding her subjective complaints.

The determination of residual functional capacity must be based on all the evidence in the record. Krogmeier v. Barnhart, 294 F.3d 1019, 1024 (8th Cir. 2002). In this case the ALJ appropriately incorporated into plaintiff's RFC those impairments and restrictions supported by the record as a whole, as outlined above. See McGeorge v. Barnhart, 321 F.3d 766, 769 (8th Cir. 2003) (ALJ properly limited RFC determination to only the impairments and limitations he found to be credible based on evaluation of the entire record.). As a result, the ALJ's RFC finding takes into account all of the work-related restrictions that are supported by and consistent with the record evidence as a whole. Based on this RFC, the ALJ concluded plaintiff was capable of performing past relevant work. Comparing plaintiff's past jobs to the RFC, the ALJ found plaintiff could perform the job of machine operator as generally performed. (Tr. 31, 62.) This determination was supported by the evidence as a whole, including plaintiff's own testimony regarding her prior job duties and the testimony of the VE. (Tr. 47-48, 62.) Alternatively, the ALJ found that there were other jobs that plaintiff could perform. (Tr. 32.) Based on the above, this Court therefore concludes the ALJ's RFC determination is supported by substantial evidence in the record as a whole.

## VI.  CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed.  An appropriate Judgment Order is issued herewith.

/s/ David D. Noce<br>
**UNITED STATES MAGISTRATE JUDGE**

Signed on January 23, 2019.